**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Michael Doering,<br><br>          Plaintiff,<br>vs.<br><br>National Health Insurance Company, et al.,<br><br>          Defendants. | No. CV-21-02198-PHX-SPL<br><br>**ORDER** |

Before the Court are Defendant LIFE's 12(b)(6) Motion to Dismiss RICO Counts 1 and 2 (Doc. 31) and Defendants National Health Insurance Company's and National General Holdings Corporation's Motion to Dismiss (Doc. 38). For the reasons that follow, the Motions will be granted.[1]

**I.   BACKGROUND**

On December 23, 2021, Justin W. Fontaine filed a Complaint initiating this matter. (Doc. 1). Mr. Fontaine has since passed away, and the named Plaintiff is now James Michael Doering, acting in his capacity as the personal representative of Mr. Fontaine's estate. (Doc. 58). Defendant National Health Insurance Company ("National Health") is a subsidiary of National General Holdings Corporation ("National General") and offers health insurance throughout the country. (Doc. 1 at 4–5). Defendant Joseph Holm is a

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. See LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

licensed insurance agent in Arizona who sells National Health policies. (Doc. 1 at 5). He is also the sole member of Defendant Health Insurance Advocates LLC. (Doc. 1 at 5). On August 1, 2019, National Health issued a group Short-Term Limited Duration ("STLD") health policy to Defendant LIFE Association, Inc., a nonprofit organization that offers various purported benefits to dues-paying members. (Doc. 1 at 5, 18). STLD policies are regulated by the states, as they fall outside the protections of the federal Affordable Care Act ("ACA"). (Doc. 1 at 15).

LIFE's application for the National Health group STLD policy listed its city as Birmingham, Alabama, and so the policy was issued in Alabama and governed by Alabama law. (Doc. 1 at 24). In fact, the Alabama address listed on LIFE's website, communications, and filings submitted to various state insurance departments is a "virtual office," from which it has its mail and calls forwarded to its actual Texas office. (Doc. 1 at 24–26). Moreover, Plaintiff alleges that a group STLD policy can only be issued to an association if it is maintained for a purpose other than obtaining insurance, but that LIFE is in fact maintained for the purpose of obtaining insurance despite its contrary representations to state regulators. (Doc. 1 at 17, 26). Plaintiff alleges that these misrepresentations to state regulators have allowed Defendants to "evade state regulation," "forum shop for the most insurer-friendly state law," and "price their products well below those offered on the ACA's exchanges." (Doc. 1 at 3).

On December 15, 2020, Mr. Holm completed an application for National's STLD policy on behalf of Mr. Fontaine and his then-wife, Kelly Fontaine, through a phone call with Ms. Fontaine. (Doc. 1 at 6–7). In response to a question about whether the applicant has received medical care for drug or alcohol abuse in the last five years, Mr. Holm marked "No." (Doc. 1 at 9). Plaintiff alleges that that Mr. Holm never actually asked Ms. Fontaine that and other questions, as Ms. Fontaine would have answered "Yes" due to Mr. Fontaine's prior treatment for alcohol abuse. (Doc. 1 at 9). The application was approved and the Fontaines were insured under the group STLD policy beginning January 1, 2021. (Doc. 1 at 10).

On February 20, 2021, Mr. Fontaine was in a severe motorcycle accident and was transported to a hospital by air ambulance for treatment for multiple serious injuries. (Doc. 1 at 11). He timely submitted insurance claims for the resulting medical expenses, and National Health pre-approved his medical care related to the accident. (Doc. 1 at 11). National Health then requested Mr. Fontaine's past medical records and began a comprehensive investigation of his medical history. (Doc. 1 at 12). On May 12, 2021, National Health denied Mr. Fontaine's claims and rescinded his STLD policy retroactive to its effective date. (Doc. 1 at 12). National Health explained that based on his medical records, the question on the application about alcohol abuse should have been answered "Yes," which would have made him ineligible for coverage. (Doc. 1 at 12). As a result, Plaintiff incurred more than $600,000 in medical expenses. (Doc. 1 at 35).

Plaintiff's Complaint alleges six counts: (1) violation of 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants National Health, National General, and LIFE; (2) violation of 18 U.S.C. § 1962(d) of RICO against National Health, National General, and LIFE; (3) breach of the duty of good faith and fair dealing against National Health and National General; (4) insurance fraud pursuant to A.R.S. § 20-443 against National Health, National General, Mr. Holm, and Health Insurance Advocates LLC; (5) violation of the Arizona Consumer Fraud Act against National Health, National General, Mr. Holm, and Health Insurance Advocates LLC; and (6) insurance agent negligence against Mr. Holm and Health Insurance Advocates LLC. (Doc. 1). Mr. Holm and Health Insurance Advocates LLC have answered the Complaint (Doc. 29), but National Health, National General, and LIFE now move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Docs. 31, 38).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

Moreover, under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Such allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### III. DISCUSSION

#### a. RICO (Counts I and II)

Defendants argue that Plaintiff's RICO claims should be dismissed for two reasons: (1) they are barred by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b); and (2) the Complaint falls short of the applicable pleading standard. These arguments will be addressed in turn.

#### i. McCarran-Ferguson Act

Initially, Defendants allege that argue that Plaintiff's RICO claims are reverse preempted by the McCarran-Ferguson Act (the "Act"). The Act provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, under the Act, "[s]tate law preempts a federal statute if (1) the federal law does not specifically relate to insurance; (2) the state law is enacted for the purpose of regulating insurance; and (3) the application of federal law to the case might invalidate, impair, or supersede the state law." *Ojo v. Farmers Grp., Inc.*, 600 F.3d 1205,

1208–09 (9th Cir. 2010). The first element is satisfied, as RICO undisputedly does not specifically relate to insurance. *See Merchs. Home Delivery Serv., Inc. v. Frank B. Hall & Co., Inc.*, 50 F.3d 1486, 1489 (9th Cir. 1995). The question, then, is whether application of RICO in this case might invalidate, impair, or supersede state insurance regulations.

"When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime," the Act does not preclude application of the federal statute. *Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999) (interpreting the meaning of "invalidate, impair, or supersede" under the Act). Defendants argue that application of RICO would directly conflict with both Arizona and Alabama insurance regulations because the states expressly allow the type of group STLD health insurance policies that form the basis of Plaintiff's RICO claims. But this argument takes far too broad a view of Plaintiff's claims. Plaintiff does not allege that RICO prohibits group STLD insurance policies generally, but rather that Defendants defrauded state regulators and consumers in violation of RICO in order to obtain a group STLD insurance policy and sell policies to consumers. Defendants do not identify any state regulation that would expressly allow such conduct, so there is no direct conflict with Plaintiff's RICO claims. *See id.* at 308.

The Court thus turns to whether application of RICO in this case would frustrate state insurance policy or administration. At least with respect to Defendant LIFE, Plaintiff concedes that Arizona's insurance code does not provide a private right of action for the conduct at issue. (Doc. 42 at 6). There is a circuit split as to whether a state insurance code's lack of a private right of action is dispositive in favor of reverse preemption, but the Ninth Circuit has yet to weigh in. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 927 F. Supp. 2d 870, 876–77 (C.D. Cal. 2013). District courts in the Ninth Circuit have also split on the issue. *Compare, e.g.*, *Pearson v. Provident Life & Accident Ins. Co.*, 834 F. Supp. 2d 1199, 1204 (D. Or. 2004) *with Negrete*, 927 F. Supp. 2d at 877. This Court agrees in full with *Negrete*'s reasoning and conclusion that "the better view"

is that "the absence of a private right of action under state insurance law is not dispositive" as to application of the Act because under the Supreme Court's holding in *Humana*, "federal law may provide for a claim 'in aid or enhancement of state regulation' even in those situations where a state does not provide for a private right of action." *Negrete*, 927 F. Supp. 2d at 877 (quoting *Humana*, 525 U.S. at 303).

Instead, this Court considers the lack of a private right of action under Arizona's insurance statutes as just one factor in the analysis of whether the application of RICO in this case might invalidate, impair, or supersede state insurance law. The Third Circuit has enumerated a "non-exclusive list of factors" that the Supreme Court considered in *Humana*:

> (1) the availability of a private right of action under state statute; (2) the availability of a common law right of action; (3) the possibility that other state laws provided grounds for suit; (4) the availability of punitive damages; (5) the fact that the damages available . . . could exceed the amount recoverable under RICO, even taking into account RICO's treble damages provision; (6) the absence of a position by the State as to any interest in any state policy or their administrative regime; and (7) the fact that insurers have relied on RICO to eradicate insurance fraud.

*Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254 (3d Cir. 2007); *see Negrete*, 927 F. Supp. 2d 870, 876 n.3 (finding that the *Weiss* factors "may be useful indicia of the proper outcome under the [Act]").

Here, the Court finds the fact that Arizona has its own civil RICO statute, "patterned after the federal RICO act," to be determinative. *Rosier v. First Fin. Cap. Corp.*, 889 P.2d 11, 13–14 (Ariz. Ct. App. 1994); *see* A.R.S. § 13-2314.04(A). In fact, the Arizona Court of Appeals has stated that "the Arizona racketeering statute is broader than its federal counterpart." *Hannosh v. Segal*, 328 P.3d 1049, 1054 (Ariz. Ct. App. 2014). Courts have repeatedly allowed plaintiffs to advance Arizona RICO claims against insurers in cases involving alleged insurance fraud. *See, e.g.*, *AAA Full Transp. Sys. v. Hollis*, No. 1 CA-CV 10-0646, 2011 WL 2936355 (Ariz. Ct. App. July 21, 2011); *AAA*

*Full Transp. Sys. v. Patterson*, No. 1 CA-CV 09-0204, 2010 WL 1640976 (Ariz. Ct. App. Apr. 22, 2010); *Torres v. Allstate Prop. & Cas. Ins.*, No. CV-09-335-TUC-DCB, 2009 WL 10673974 (D. Ariz. Sept. 25, 2009); *see also McClure Enters., Inc. v. Gen. Ins. Co. of Am.*, No. CV 05-3491-PHX-SMM, 2009 WL 73677, at *10 (D. Ariz. Jan. 9, 2009). Because the Arizona legislature has itself provided a private right of action for racketeering that applies to allegations against insurers, it is clear that application of its narrower federal counterpart would "not frustrate any declared state policy or interfere with [Arizona's] administrative regime." *Humana Inc.*, 525 U.S. at 310. To the extent Defendants argue that Plaintiff does not have a *valid* state-law RICO claim based on the facts alleged, given that the federal statute is more limited than the state statute, the Court addresses that issue by considering whether Plaintiff has stated a federal RICO claim.

  **ii. Pleading Standard**

To state a federal civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (internal quotation marks omitted). Moreover, the Rule 9(b) pleading standard applies to civil RICO fraud claims such as this one. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065–66 (9th Cir. 2004). Defendants focus their arguments on the final three elements.[2] The Court will first address the alleged pattern of racketeering activity before addressing causation.

<u>Pattern of Racketeering Activity.</u> "'Racketeering activity' is any act indictable under several provisions of Title 18 of the United States Code," including wire fraud, which Plaintiff alleges as the racketeering activity in this case. *Turner v. Cook*, 362 F.3d

---

[2] National's Motion to Dismiss also argues that Plaintiff has failed to plead the second element, but National's Reply does not meaningfully rebut Plaintiff's argument that the Complaint pleads an associated-in-fact enterprise, which the Court finds well taken. *See In re Katz Interactive Call Processing Pat. Litig.*, Nos. 07-ml-01816-B RGK (FFMX), CV 07-2134 RGK (FFMx), 2009 WL 8636055, at *1–2 (C.D. Cal. Oct. 26, 2009).

1219, 1229 (9th Cir. 2004). To plead wire fraud as a predicate act, a plaintiff must allege "(A) the formation of a scheme to defraud, (B) the use of . . . wires in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). A wire communication "in is furtherance of a fraudulent scheme if it is 'incident to the execution of the scheme,' meaning that it 'need not be an essential element of the scheme, just a step in the plot.'" *Comm. To Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1176 (E.D. Cal. 2017) (quoting *United State v. Garlick*, 240 F.3d 789, 795 (9th Cir. 2001)). As noted, Rule 9(b) requires particularity when alleging fraud, but "the only aspects of wire fraud that require particularized allegations are the factual circumstances of the fraud itself." *Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). "The pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id.* at 553.

Plaintiff's Complaint begins by broadly alleging that "Defendants have concocted an elaborate scheme to evade consumer protection laws for insureds in Arizona and other states in order to maximize sales of Short-Term, Limited Duration Insurance policies . . . and to maximize denials and rescissions of these policies in the event of large claims." (Doc. 1 at 2). Under the "Predicate Acts" heading of the Complaint, Plaintiff alleges that Defendants used wires to transmit misrepresentations and omissions to state insurance departments; to collect information for Mr. Fontaine's application; to collect LIFE membership fees and National Health premiums; and to send and receive an authorization form containing allegedly misleading statements from Mr. Fontaine allowing National Health to obtain his medical records. (Doc. 1 at 31–32). None of these instances, however, are pled with the requisite particularity. Elsewhere in the Complaint, Plaintiff alleges the date and contents of various submissions to specific state regulatory bodies, but it does not specify *how* any given document was filed, and the Court cannot simply assume the use of wires. (*See* Doc. 1 at 25–27). As to the rest of the alleged predicate acts, the Complaint fails to set forth any details as to the circumstances, including the

time, the means of communication, and how they furthered the alleged scheme to defraud. *See Odom*, 486 F.3d at 553–54. Accordingly, Plaintiff has failed to plead predicate acts of racketeering activity in accordance with Rule 9(b). As such, Plaintiff has also failed to plead a pattern of racketeering activity.

Causation. A civil RICO claim requires both but-for and proximate causation. *Harmoni Int'l Spice, Inc. v. Hume*, 914 F.3d 648, 651 (9th Cir. 2019). Here, Defendants dispute only proximate causation. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Three "practical considerations" guide the Court's analysis:

> (1) "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the [RICO] violation, as distinct from other, independent, factors";
>
> (2) "directly injured victims can generally be counted on to vindicate the law," rendering unnecessary recognition of a cause of action for those only indirectly injured; and
>
> (3) allowing recovery by indirectly injured plaintiffs "would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury . . . to obviate the risk of multiple recoveries."

*Club One Casino, Inc. v. Perry*, 837 F. App'x 459, 460–61 (9th Cir. 2020) (quoting *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 269–70 (1992)).[3] Still, proximate cause "is a flexible concept that does not lend itself to a black-letter rule that will dictate the result

---

[3] Plaintiff largely relies on these considerations to argue that proximate causation is satisfied, referring to them as a "three-factor proximate cause test for RICO," but that is a mischaracterization. (Doc. 42 at 17). Rather, the Supreme Court has been exceedingly clear that there is no black-letter rule for proximate cause but rather that it is a flexible tool "to limit a person's responsibility for the consequences of that person's own acts, with a particular emphasis on the demand for some direct relation between the injury asserted and the injurious conduct alleged." *Bridge v. Phx. Bond & Indem. Co*, 553 U.S. 639, 654 (2008) (internal quotation marks and citation omitted); *see also Holmes*, 503 U.S. at 269 (setting forth the three considerations as reasons why a direct relationship between the injury and the injurious conduct is one of the central elements of proximate causation).

in every case." *Bridge v. Phx. Bond & Indem. Co.*, 553 U.S. 639, 654 (2008).

In this case, it cannot be said that Plaintiff's injury—his incursion of uncovered medical expenses—is the direct result of Defendants' scheme to provide insurance under an Alabama group STLD policy allegedly issued under false pretenses. *Anza* is instructive. There, the plaintiff sued the owners of its principal competitor under RICO. *Anza*, 547 U.S. at 453–54. The plaintiff alleged that the defendants had failed to charge the requisite state sales tax to certain customers, allowing them to charge lower prices without affecting profits. *Id.* at 454. To conceal the scheme, the defendants allegedly submitted fraudulent tax returns to state regulators, which was the basis for the RICO claims. *Id.* The Supreme Court held that the alleged RICO violation, however, was not the proximate cause of the plaintiff's alleged injury. *Id.* at 461. The Court reasoned that the cause of the plaintiff's harm was "a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the state)." *Id.* at 458. The Court explained that the defendants could have lowered their prices for "any number of reasons unconnected to the asserted pattern of fraud," and that "the fact that a company commits tax fraud does not mean the company will lower its prices." *Id.* at 458–59.

Likewise, here, the cause of Plaintiff's asserted injury was the rescission of Plaintiff's policy and denial of coverage following his motorcycle accident, as Plaintiff alleges for his state-law claims. (Doc. 1 at 11–15). Those actions are entirely distinct from the alleged RICO violation of making misrepresentations to state insurance regulators. Although Plaintiff alleges that National Health had a "[f]raudulent [r]ecission and [d]enial [o]peration," it is not in any way clear how *that* alleged operation is directly related to the alleged regulatory misrepresentations. Rather, analogous to the circumstances in *Anza*, Defendants could have rescinded Plaintiff's policy and denied coverage for a variety of reasons unconnected to the alleged wire fraud, and the fact that LIFE fraudulently represented its location and purpose, if true, does not mean that Defendants would necessarily, or even likely, rescind the policy and deny coverage.

To be sure, Plaintiff was a consumer of Defendants' services, whereas the plaintiff

in *Anza* was the defendant's competitor. But had the plaintiff in *Anza* been a consumer who decided to purchase the defendant's product based on the lower price and was then injured by the product, the same result would surely follow: the plaintiff may not have purchased the product but for the lower price made possible by the defendant's tax fraud, but the tax fraud would not be the proximate cause of the plaintiff's injuries. Similarly, here, Plaintiff alleges that Defendants were able to offer insurance at a lower price by fraudulently issuing a group STLD policy in Alabama. (Doc. 1 at 29–30). But that alleged fraud is not the proximate cause of Plaintiff's incursion of medical expenses based on the later rescission of the policy he purchased. Accordingly, Plaintiff has failed to state a RICO claim under § 1962(c).

Plaintiff also alleges a RICO conspiracy claim under § 1962(d), which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). "Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000); *see also Comm. To Protect Our Agric. Water*, 235 F. Supp. 3d at 1180 ("Because plaintiffs have failed to adequately allege a § 1962(c) RICO claim, they cannot plausibly allege a RICO conspiracy under § 1962(d)."). Thus, having failed to state a § 1962(c) RICO claim, Plaintiff has also failed to state a § 1962(d) RICO conspiracy claim.

### b. State-Law Claims

Subject matter jurisdiction in this case is predicated on the federal question raised by the RICO claims.[4] (Doc. 1 at 4). Because those claims will be dismissed for failure to state a claim, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). Thus, the Complaint will be dismissed in its entirety.

///

---

[4] The Court lacks diversity jurisdiction as, at minimum, Plaintiff and Defendant Holm are both citizens of Arizona. *See* 28 U.S.C. § 1332(a); (Doc. 1 at 4–5).

## IV.  CONCLUSION

Leave to amend a deficient complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). When dismissing for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). Here, the deficiencies in Plaintiff's Complaint may be curable, so leave to amend will be granted. *See Harmoni Int'l Spice, Inc.*, 914 F.3d at 654. Accordingly,

**IT IS ORDERED:**

1. That Defendant LIFE's 12(b)(6) Motion to Dismiss RICO Counts 1 and 2 (Doc. 31) is **granted**;
2. That Defendants National Health Insurance Company's and National General Holdings Corporation's Motion to Dismiss (Doc. 38) is **granted**;
3. That the Complaint (Doc. 1) is **dismissed without prejudice**;
4. That Plaintiff shall have until **September 9, 2022** to file an Amended Complaint; and
5. That if Plaintiff does not file an Amended Complaint by September 9, 2022, the Clerk of Court must terminate this action.

Dated this 19th day of August, 2022.

Honorable Steven P. Logan
United States District Judge